CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/1/2022
JULIA C. DUDLEY, CLERK
BY: s/ C. Amos
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

**FRANK VEGA  pro se**

    **Plaintiff,**

v.                                    Case No. 6:21-cv-00057-NKM

**CENTURY CONCRETE, INC.,**

    **Defendant**                        **JURY TRIAL DEMAND**

## FIRST AMENDED COMPLAINT

I, Frank Vega pro se Plaintiff, (hereinafter, "Vega" or "Plaintiff"), state as my Complaint against Defendant Century Concrete, Inc. (hereinafter "CCI" or "Defendant"), the following:

## I. JURISDICTION

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as codified under 42 U.S.C. §§2000e, et seq., 42 U.S.C. 5 2000e-5(f) ("Title VII"), the Civil Rights Act of 1991, as amended, as codified under 42 U.S.C. 1981, et seq. ("Section 1981"), and the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101et.seq., and the ADA Amendments Act of 2008 ("ADAAA").

2. Venue is appropriate as the acts and/or omissions of Defendant from which the causes of action arise, occurred within the Western District of Virginia. See 28 U.S.C. §1391(b)(2).

3. Due to its contacts within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

4. Plaintiff timely filed (by legal counsel, Strelka Employment law) a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 31, 2020. Plaintiff received a Dismissal and Notice of Rights from the EEOC dated August 4, 2021, attached hereto as **EXHIBIT A**. Plaintiff, files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

5. Vega, is a fifty-nine (59) year old Latino male of Puerto Rican descent, born in August 1960, and a resident of Evington, Virginia.

6. CCI is a construction firm that is based in Virginia Beach, VA and maintains its headquarters in Virginia Beach, VA.

## III. FACTUAL ALLEGATIONS

7. Vega, was hired by subcontractor CCI on May 29, 2019, as a Carpenter assigned to work at the (UVA) University of Virginia Student Health and Wellness Center jobsite (managed by General Contractor Barton Malow/BM) located in Charlottesville, Virginia. Vega held this position until his unlawful termination on March 13, 2020, allegedly as a lay off/Reduction in Force. CCI alludes to this rationale in their Position Statement to the (EEOC).

8. Between May 29, 2019, and March 13, 2020, (nine (9) months, and thirteen (13) days). Vega nor forty-four (44) other workers were never assigned to work at the University of Virginia Medical Center (UVA) as CCI alleges in their Position Statement submitted to the (EEOC) Dated March 1, 2021, attached hereto as **EXHIBIT B**.

9. Vega stated above ¶ 7, he was "assigned to work at the (UVA) Student Health and Wellness Center." (Location: 550 Brandon Ave. Charlottesville, VA. 22903). University of

Virginia Medical Center (UVA). (Location: 1300 Jefferson Park Ave. Charlottesville, VA 22903). See BM and CCI Subcontract and copy of google maps for the two locations. Attached hereto as **EXHIBIT C**.

10. During Vega's employment with CCI, Vega met the legitimate business expectations of CCI. However, any reasons cited by CCI for Vega's termination from employment were pretextual.

11. Vegas Job Site Supervisors were Carlito Hamlin (African American), and later Derrick Mclean (African American).

12. On August 20, 2019, Vega suffered a work-related injury to his Lower Back while working at the (UVA) Student Health and Wellness Center jobsite location. Vega was taken to the MedExpress clinic by BM Safety Man Mr. Mark Haggenmaker. From that day forward Mr. Vega was placed on light duty by the Doctor.

13. Shortly after, CCI supervisor Mr. Hamlin agreed to accommodate Vega's medical work restrictions (ten-pound lifting limit, no operating heavy machinery, no bending, no walking, no standing for long periods, etc.). Vega was treated and regarded as an individual with a temporary disability related work injury (not a qualified individual). Vega met the legitimate business expectations of CCI within his light duty work restrictions during his employment, and until his termination on March 13, 2020.

14. On August 29, 2019, Vega filed a workers' compensation claim through his workers compensation Attorney Jaleh K. Slominski, 101 Duncraig Drive, suite 103 Lynchburg, Virginia 24502. Phone 434.384.9400 - Fax 434.384.9306.

## Vega is Subjected to Discriminatory Treatment

15. Unfortunately, Vega was subjected to hostile and discriminatory working conditions by CCI during his employment with CCI as, upon information and belief, Vega's supervisors and co-workers demonstrated a discriminatory animus against Vega, based upon his race and/or national origin, and disability related occupational injury, and perpetuated a climate of discrimination, intimidation, hostility, and retaliation.

16. On September 10, 2019, BM Safety Man Haggenmaker slandered and defamed Vegas character on the jobsite when Haggenmaker stated to another CCI employee (Jose L. Guerrero, a Carpenters, non-Puerto Rican National), "We believe Frank is faking his injury." This comment caused rumors among Vega's co-workers (with name calling such as liar, and a scammer) of which Vega experienced hostility, and intimidation, humiliation, pain, and suffering. Haggenmaker was someone with knowledge of Vegas protected activity and retaliatory animus.

17. On September 26. 2019, Vega returned back from his scheduled visit with (UVA) spine Doctor. Vega signed out at four (4) pm. The next day CCI Supervisor Hamlin stated to Vega "don't sign out at four (4) again, only eight (8) hours a day/forty (40) hours a week because you're on light duty." In spite of the fact that Vega was cleared to work overtime by his spine Doctor. Vega believes that CCI supervisor Hamlin's reason for denying him overtime was based on his disability related work injury, and was discriminatory, and intentional.

## Vega Receives an Unwarranted Disciplinary Action

18. On Oct. 14, 2019, shortly after a filing a Worker Compensation Claim. Disciplinary action was taking against Vega by CCI supervisor Mr. Hamlin for absenteeism. Vega lost his transportation and was out four (4) days from (10/8/2019 to 10/11/2019), he had to purchase another vehicle. Vega did notify his supervisor Hamlin by text message for each day. Hamlin then threatened Vega, and stated, "there were more write-ups coming." CCI denies disciplining Vega for unexcused absences in their Position Statement to the (EEOC).

## Vega is Treated Less Favorably than Non-Puerto Rican Employees

19. Subsequently, the following week there were two (2) other CCI employees (Non-Puerto Rican Nationals) who were out three days from (10/14/2019 to 10/16/2019. They had lost their transportation as Vega did. They did not receive disciplinary action as Vega did. They were similarly situated as Vega. Upon information and belief, CCI's conduct towards Vega was discriminatory, retaliatory as no business-related legitimate reason justified the actions CCI took against Vega.

20. Specifically, on Dec. 6, 2019, Vega brought the matter up with Hamlin during the morning safety meeting. Vega asked Hamlin if he remembered telling me that I was only allowed 8hrs a day/40hrs a week because I was on light duty. He stated "yes". Then Vega asked him, "how is it that you have another worker on light duty allowed to work overtime." He stated that "the other worker is able to work and he's productive.' You are not able to work, and you're not productive."

21. Vega and the other CCI employee, Hugo A. Estrada (non-Puerto Rican National) were similarly situated, Vega and Estrada both the same job classification as Carpenter. Vega and

Estrada had a ten (10) lb. lifting medical restriction. Vega and Estrada were medically restricted from doing carpentry work. Vega and Estrada were medically cleared for overtime. Vega and Estrada had the same supervisor. Vega and Estrada were subject to the same standards, employment policies, and company rules. Vega and Estrada engaged in same conduct (working while on Light-Duty-Status), and job task, and responsibilities.

22. Vega believes these circumstances raise a reasonable inference of unlawful discrimination and retaliation based upon my race and/or national origin and disability related work injury.

**CCI Supervisor Threatens Vega's Employment**

23. New CCI Supervisor Derrick Mclean agreed to accommodate Vega's medical restrictions on January 28, 2020, for the lower back injury of August 20, 2019.

24. On February 7, 2020, Vega suffered a second injury to his left shoulder. While Vega was being led by Mclean to the Barton Malow office trailer shortly after his shoulder injury. Mclean stated to him "Are you going to file a report?" Vega said "yes." Mclean then stated, "You know that BM can fire you for getting hurt again."

25. Vega replied, "Oh, you mean the same way BM threatened to fire Jorge Ibarra (CCI Carpenter Non-Puerto Rican National) when he was hurt three (3) times in two (2) weeks". Mclean remain silent and did not respond.

26. Jorge Ibarra never filed a workers compensation claim for any of his three (3) injuries he suffered within the two (2) week period shortly before Vegas lower back injury of August 20, 2019.

27. Ibarra never received disciplinary action as Vega did. Ibarra never filed a complaint with Human Resources as Vega did. Ibarra was not terminated as Vega was.

28. Upon information and belief, these circumstances raise a reasonable inference of unlawful discrimination and retaliation based upon Vega's race and national origin, and disability related work injury.

## CCI Supervisor Terminates Vega's Employment

29. On December 17, 2019, Vega engaged in protected activity and filed a Disability Discrimination Complaint with CCI Human Resource Department (Ms. Chelsea Henderson). For being denied overtime because of Plaintiffs temporary disability related work injury and for being on light duty status, in spite of being cleared to work overtime by his doctor.

30. On January 11, 2020, Vega filed an Amended Disability Complaint with CCI HR department, Chelsea Henderson. To add unintentionally omitted information pertaining to the filing of a Workers Compensation Claim and the Attorneys Name and Address.

31. Because of a crane incident in February 2020. Vega filed a complaint with (VOSH), Virginia Occupational Safety and Health on March 3, 2020.

32. On March 5, 2020, Vegas's (VOSH) complaint leads to onsite Inspection, (VOSH) Inspector notifies CCI and BM the reason for the inspection was "Crane Complaint Related"

33. After only two (2) months and two (2) weeks later on March 13, 2020, CCI supervisor Mclean terminates Vegas employment. Mclean stated his reason for the termination to Vega "I'm only keeping people who are beneficial and/or productive." This was pretext in retaliation for complaining about discrimination, and eight (8) days after complaining about a crane safety related incident.

34. Vega has reasonable cause to believe that the inconsistencies in the record raised a genuine issue of material fact as to whether CCI's reason for the termination was a pretext for retaliation for engaging in protected activity.

35. Upon information and belief, CCI'S conduct towards Vega was discriminatory, intentional, and retaliatory, as no business-related legitimate reason justified the actions CCI took against Vega.

36. CCI has an obligation to maintain a work environment not charged with race and/or national origin and/or (ADA), ADAAA discrimination.

37. However, CCI failed to meaningfully address Vega's complaints and instead deviated in their investigation process by not communicating with Vega, and hearing his side of the incidents, permitted a hostile work environment to exist that was discriminatory, retaliatory, and hostile to Vega and engaged in discriminatory practices with malice or reckless indifference to the federally protected rights of Vega.

38. CCI would not have taken the discriminatory actions against Vega but for his Race and/or National Origin and/or Disability related occupational injury.

39. Rather, Vega's termination was merely a pretext to unlawful discrimination and retaliation by CCI.

40. Because the actions taken by Hamlin, Mclean, and Henderson, and other CCI employees were taken within the scope of their employment, CCI is responsible for their actions based upon the doctrine of *respondeat superior*.

## COUNT I: CLAIM FOR RACE DISCRIMINATION IN VIOLATION OF TITLE VII

41. Vega incorporates by reference herein the preceding paragraphs of this Complaint.

42. Vega identifies his race as Latino and is protected from race discrimination by

Title VII.

43. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to Plaintiff.

44. Defendant violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to Plaintiff, and by wrongfully terminating Plaintiff.

45. Specifically, Defendant treated Vega less favorably than (non-Puerto Rican national) employees, subjected Vega to several racist conduct, failed meaningfully address Vega complaints about workplace discrimination, hidunwarranted discipline on Vega, and threatened his employment and ultimately terminated Vega's employment, because of his race.

46. As a direct and proximate result of Defendant's actions, Vega has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

47. At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Vega as to support an award of liquidated and/or punitive damages.

48. Prior to Vega termination from employment with Defendant, Vega was performing his work at a satisfactory level and meeting or exceeding Defendant's legitimate business expectations.

49. Any reasons cited by Defendant for Vega termination were pretextual as Vega's work performance was meeting legitimate business expectations.49. The above-described acts by Defendant constitute race discrimination in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2oooe, et seq. ("Title VII").

50. Vega is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2oooe-5(k).

### COUNT II: CLAIM FOR RACE AND NATIONAL ORIGIN RETALIATION IN VIOLATION OF TITLE VII

51. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

52. Plaintiff identifies his race as Latino and is protected from race discrimination and retaliation by Title VII.

53. During Plaintiffs employment with Defendant, Plaintiff performed his work at a satisfactory level and met or exceeded Defendant's legitimate business expectations.

54. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with racial discrimination and retaliation and hostile to Plaintiff.

55. Defendant violated federal law by permitting a work environment to exist that was discriminatory and retaliatory to Plaintiff, based upon Plaintiff's race and national origin.

56. Specifically, Defendant treated Plaintiff poorly and less favorably than non-Puerto Rican employees, subjected Plaintiff to several racist conduct, failed to meaningfully address Plaintiff's complaints about workplace discrimination, levied unwarranted discipline on Plaintiff, threatened his employment and ultimately terminated Plaintiff's employment, because of his race.

57. Plaintiff engaged in the protected activity of complaining about his discriminatory work environment and was subsequently targeted and terminated from employment.

58. Plaintiff was unfairly terminated from employment in direct retaliation for his complaints about workplace discrimination.

59. Prior to Plaintiffs termination, Plaintiff was performing his work at a satisfactory level and meeting or exceeding Defendant's legitimate business expectations.

60. Any reasons cited by Defendant for Plaintiffs termination were pretextual as Plaintiff's work performance was meeting Defendant's legitimate business expectations.

61. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

62. At all times material hereto, Defendant engaged in retaliatory practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

63. Defendant would not have targeted Plaintiff or taken the other retaliatory actions against him, but for Plaintiff's race, national origin and/or his related complaints.

64. The above-described acts by Defendant constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2oooe, *et seq.* ("Title VII").

65. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2oooe-5(k).

### COUNT III: CLAIM FOR NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

66. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

67. Plaintiff identifies his national origin as Puerto Rican and is protected from national origin discrimination by Title VII.

68. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with national origin discrimination and hostile to Plaintiff.

69. Defendant violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to Plaintiff, and by wrongfully terminating Plaintiff.

70. Specifically, Defendant treated Plaintiff less favorably than non- Puerto Rican employees, failed to meaningfully address Plaintiff's complaints about workplace discrimination, levied unwarranted discipline on Plaintiff, threatened his employment and ultimately terminated Plaintiff's employment, because of his national origin.

71. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

72. At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

73. Prior to Plaintiffs termination, Plaintiff was performing his work at a satisfactory level and meeting or exceeding Defendant's legitimate business expectations.

74. Any reasons cited by Defendant for Plaintiff's termination were pretextual as Plaintiff's work performance was meeting legitimate business expectations.

75. The above-described acts by Defendant constitute national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

76. Plaintiff is entitled to all reasonable costs, including attorneys' fees associated with this matter, plus interest, pursuant to 42 U.S.C. § 2oooe-5(k).

## COUNT IV: CLAIM FOR TITLE VII HOSTILE WORK ENVIRONMENT

77. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint

78. Plaintiff identifies his race as Latino and his national origin as Puerto Rican and is protected from discrimination and a hostile work environment by Title VII.

79. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with discrimination and hostile to Plaintiff.

80. Defendant violated federal law by creating and permitting a work environment to exist that was discriminatory, and hostile to Plaintiff.

81. Specifically, Defendant treated Plaintiff less favorably than non-Puerto Rican employees, subjected Plaintiff to racist conduct, failed to meaningfully address Plaintiff's complaints about workplace discrimination, levied unwarranted discipline on Plaintiff, threatened his employment, and ultimately terminated Plaintiff's employment, because of his race and/or national origin.

82. The conduct previously detailed was unwelcome and unlawful, and based on Plaintiff's race and national origin, as evinced by the disparate treatment Plaintiff received during his employment with Defendant.

83. Indeed, Plaintiff was ultimately unlawfully terminated from employment due to discriminatory, retaliatory, and hostile conduct.

84. As direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

85. At all times material hereto, Defendant engaged in a practice or practices

supporting a hostile work environment with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

86. The above-described acts by Defendant constitute the creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2oooe, *et seq.* ("Title VII").

87. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2oooe-5(k).

## COUNT V: CLAIM FOR RACE DISCRIMINATION IN VIOLATION OF §1981

88. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

89. Plaintiff identifies his race as Latino and is protected from race discrimination by Section 1981.

90. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to Plaintiff.

91. Specifically, Defendant treated Plaintiff less favorably than non-Puerto Rican employees, subjected Plaintiff to several racist conduct, failed to meaningfully address Plaintiff's complaints about workplace discrimination, levied unwarranted discipline on Plaintiff, threatened his employment, and ultimately terminated Plaintiff's employment, because of his race.

92. Plaintiff engaged in the protected activity of complaining about his discriminatory work environment and was subsequently targeted and terminated from employment.

93. Plaintiff was unfairly terminated from employment in direct retaliation for his

complaints about workplace discrimination.

94. Prior to Plaintiffs termination, Plaintiff was performing his work at a satisfactory level and meeting or exceeding Defendant's legitimate business expectations.

95. Any reasons cited by Defendant for Plaintiffs termination were pretextual as Plaintiff's work performance was meeting Defendant's legitimate business expectations.

96. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

97. At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

98. Defendant would not have targeted Plaintiff or taken the other retaliatory actions against him, but for Plaintiff's race and/or his related complaints.

99. The above-described acts by Defendant constitute retaliation in violation of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq.* ("Section 1981").

100. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 1988(b).

## COUNT VI: CLAIM FOR
## §1981 HOSTILE WORK ENVIRONMENT

101. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

102. Plaintiff identifies his race as Latino and is protected from race discrimination

and a hostile work environment by Section 1981.

103. At all times material hereto, Defendant had an obligation to maintain a work environment that was not charged with racial discrimination and hostile to Plaintiff and other minority employees.

104. Defendant violated federal law by creating and permitting a work environment to exist that was discriminatory, hostile, and offensive to Plaintiff

105. Specifically, Defendant treated Plaintiff poorly and less favorably than non-minority employees, subjected Plaintiff to numerous distasteful and racist comments, failed to meaningfully address Plaintiff's complaints about workplace discrimination, levied unwarranted discipline on Plaintiff, threatened his employment and physical well- being, and ultimately terminated Plaintiff's employment, because of his race.

106. The conduct previously detailed was unwelcome and unlawful, and based on Plaintiff's race, as evinced by the disparate treatment Plaintiff received during his employment with Defendant.

107. The conduct was sufficiently severe and pervasive so as to alter the conditions of Plaintiff's employment and to create an abusive atmosphere. Indeed, Plaintiff was ultimately unlawfully terminated from employment due to racially discriminatory, retaliatory, and hostile conduct.

108. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

109. At all times material hereto, Defendant engaged in a practice or practices supporting a hostile work environment with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated and/or punitive damages.

110. The above-described acts by Defendant constitute the creation of a hostile work environment in violation of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981, *et seq.* ("Section 1981").

111. Plaintiff is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 1988(b).

## COUNT VII: CLAIM FOR DISCRIMINATION IN VIOIATION OF THE (ADA) ADAAA 2008

112. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

113. At the time of Vega's termination from employment, Vega had a disability related occupational injury and was treated and regarded as having a disability by the CCI. Plaintiff was protected from discrimination and retaliation by the (ADA), ADAAA 2008.

114. Prior to Mr. Vegas termination from employment, Mr. Vega was performing his work at a satisfactory level and meeting CCI's legitimate business expectation.

115. During his employment with CCI, Mr. Vega experienced unwelcome discrimination based upon his disability related occupational injury, by being called "Mr. Handicap" by his supervisor Mr. Hamlin, and among his coworkers. Ultimately resulting in his termination from employment.

116. Defendant would not have terminated Plaintiff, or taken the other discriminatory actions against him, but for Plaintiff's disability related occupational injury.

117. Any reasons cited by Defendant for Plaintiffs termination were pretextual as Plaintiff's work performance was meeting Defendant's legitimate business expectations during his employment with Defendant.

118. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

119. At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

120. The above-described acts by Defendant and employees of Defendant constitute disability discrimination in violation of the Americans Disability Act as codified under Title 42 U.S.C. 12101 et seq., and the ADA Amendments Act of 2008 ("ADA") and of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., and the Civil Rights Act of 1991, as amended ("Title VII").

121. My disabilities and my membership within a protected class provide me protections from discrimination and retaliation at the workplace pursuant to the Americans with Disabilities Act, as codified under Title 42 U.S.C. 12101 et seq., and the ADA Amendments Act of 2008 ("ADA") and of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., and the Civil Rights Act of 1991, as amended ("Title VII").

WHEREFORE, Plaintiff Frank Vega prays for judgment against Defendant Century Concrete Inc., for equitable relief, compensatory, liquidated and/or punitive damages, together with prejudgment interest from the date of termination of Plaintiffs employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

**Frank Vega pro se**

*[signature]*

Frank Vega
73 Crystal Lane
Evington, Virginia 24550
Tel: (434)-221-6592
vegfl78@gmail.com

I hereby swear and affirm the foregoing is true and correct, under penalties of perjury. If called as a witness, I could and would testify to the facts set forth herein.

Executed on this __2__ day of __March__ 2022.
Signed by: _[signature]_ Dated: 3-2-2022

_____ (Notary Public)
In witness hereof, I hereunto set my hand and Official Seal.

Commission Expiration: __2-28-25__

*[Notary Seal: SETH BANNER, NOTARY PUBLIC, REG. # 7968377, MY COMMISSION EXPIRES: 2-28-25, COMMONWEALTH OF VIRGINIA]*