CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
7/28/2022
JULIA C. DUDLEY, CLERK
BY:  s/ C. Amos
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

|  |  |
|---|---|
| FRANK VEGA, | CASE NO. 6:21-cv-57 |
| *Plaintiff,* |  |
| v. | MEMORANDUM OPINION |
| CENTURY CONCRETE INC., |  |
| *Defendant.* | JUDGE NORMAN K. MOON |

## I.   Introduction

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (Dkt. 31). This case is a dispute between Frank Vega (Plaintiff), proceeding *pro se*, and his former employer, Century Concrete, Inc. (Defendant or CCI), a Virginia-based construction company. Vega worked as a construction worker for CCI from May 2019 until CCI terminated his employment in March 2020. Vega alleges that his termination was in violation of federal law. The First Amended Complaint pleads seven causes of action against CCI: Race Discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.*, as amended (Count I); Race/National Origin Retaliation under Title VII (Count II); National Origin Discrimination under Title VII (Count III); Hostile Work Environment under Title VII (Count IV); Race Discrimination under 42 U.S.C. § 1981 (Count V); Hostile Work Environment under § 1981 (Count VI); and Disability Discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, as amended (Count VII). Defendant moves to dismiss the First Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 31).

The Court will dismiss every count in the First Amended Complaint except for Count VII. The Court holds that Vega has failed to state a plausible claim for relief on Counts I through VI because Vega has not pled any facts that could form a discrimination claim based on race or national origin, nor a Title VII retaliation claim, nor a hostile work environment claim. But Vega has pled sufficient facts to make out a plausible claim for relief for discrimination based on disability under Count VII if the allegations in the First Amended Complaint, including most critically the allegation that Vega's supervisor referred to him as "Mr. Handicap" before his termination, are taken as true.

## II.   Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead

"only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

When a plaintiff is proceeding *pro se*, as here, the Court must construe their pleadings liberally. *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018).

### III.   Allegations

CCI is a construction company. (Dkt. 23 at ¶ 6). Frank Vega is a worker of Puerto Rican descent. (*Id.* at ¶ 5). CCI hired Vega in May 2019 to work as a carpenter on a construction project at the University of Virginia in Charlottesville. (*Id.* at ¶¶ 7, 9). In August 2019, Vega experienced a lower back injury on the job. (*Id.* at ¶ 12). CCI placed him on light duty, which allowed him to lift a maximum of ten pounds and prohibited him from operating heavy machinery, bending, walking, and standing for long time periods. (*Id.* at ¶ 13). Shortly after his injury, Vega filed for workers' compensation. (*Id.* at ¶ 14).

Vega alleges that in September 2019, one of his coworkers told another coworker that Vega "was faking his injury." (*Id.* at ¶ 16). Vega alleges that this produced rumors among his coworkers who called him a liar and scammer. (*Id.*). Vega alleges that he left work early for a medical appointment one day in September 2019, and that the next day his supervisor, Carlito Hamlin, told Vega that he was only supposed to work eight hours per day and 40 hours per week (i.e., no overtime) because he was on light duty. (*Id.* at ¶ 17). Vega contends that his spine doctor had cleared him to work overtime but claims that Hamlin denied him overtime because of his work injury. (*Id.*). Vega also alleges that Hamlin and other unnamed coworkers referred to him as "Mr. Handicap" while he was injured. (*Id.* at ¶ 115).

Vega alleges that he missed four days of work in October 2019 because of transportation

issues and says that he notified Hamlin each time he was absent. (*Id.* at ¶ 18). Hamlin told Vega that he would receive continued write-ups for further absences. (*Id.*). Vega alleges that the week after Hamlin reprimanded him for missing work, two other employees (who were not Puerto Rican) were absent from work for three days due to similar transportation issues but were not reprimanded. (*Id.* at ¶ 19).

Vega alleges that in a safety meeting on December 6, 2019, he asked why another CCI employee who was on light duty and had similar restrictions but was not of Puerto Rican descent was allowed to work overtime while he was not. (*Id.* at ¶¶ 20–22). He alleges that Hamlin responded that "the other worker is able to work and he's productive. You are not able to work, and you are not productive." (*Id.* at ¶ 20).

On December 17, 2019, Vega filed an internal disability discrimination complaint with CCI's Human Resources Office complaining that he was denied the ability to work overtime because he had a "temporary disability related work injury" and was on light duty status. (*Id.* at ¶ 29). On January 11, 2020, Vega amended that internal complaint to include that he had also filed a workers' compensation claim. (*Id.* at ¶ 30).

On February 7, 2020, Vega suffered a second injury, to his left shoulder. (*Id.* at ¶ 24.) Afterwards, Derrick McLean, a CCI supervisor, allegedly asked Vega whether he was going to file a "report." (*Id.* at ¶¶ 11, 24). When Vega responded in the affirmative, McLean allegedly told Vega "[y]ou know that BM[1] can fire you for getting hurt again." (*Id.* at ¶ 24). Vega alleges that he then asked McLean "Oh, you mean the same way BM threatened to fire Jorge Ibarra when he was hurt three (3) times in two (2) weeks." (*Id.* at ¶ 25). Vega alleges that McLean

---

[1] Barton Marlow CCIP, or BM, the general contractor, was previously a defendant in this suit, but was terminated after Vega did not name it as a defendant in the First Amended Complaint, instead pursuing claims only against CCI, the subcontractor and, apparently, his direct employer. *See* Dkt. 23.

remained silent and did not respond. (*Id.*). Vega notes that Jorge Ibarra never filed for works compensation for any of his injuries, nor did CCI ever punish Ibarra. (*Id.* at ¶ 27).

Vega further alleges that on March 3, 2020, he filed a report with Virginia Occupational Safety and Health (VOSH) because of a "crane incident" that occurred in February 2020. (*Id.* at ¶ 31). VOSH performed an investigation of the "crane incident" on March 5, 2020. (*Id.* at ¶ 32).

Finally, Vega alleges that McLean terminated Vega's employment on March 13, 2020. (*Id.* at ¶ 33). Vega alleges that McLean told him that McLean was terminating him because "I'm only keeping people who are beneficial and/or productive." (*Id.*).

Vega filed a charge with the Equal Employment Opportunity Commission (EEOC) on December 31, 2020. (Dkt. 23-1). EEOC dismissed his claim on August 4, 2021 and issued him a right to sue notice at that time. (*Id.*).

## IV.  Discussion

### A.  Consideration of Defendant's Statements Attached to Plaintiff's Complaint

Throughout its memo in support of its motion to dismiss, CCI relies on, and argues that the Court should rely on, allegations that CCI made during Vega's EEOC proceedings. (*See* Dkt. 32 at ¶¶ 2–7). During those proceedings, CCI filed a Position Statement with its narrative about Vega's termination. (Dkt. 23-1 at 3–5). Vega attached CCI's Position Statement (along with other documents from the EEOC proceedings) as exhibits to the First Amended Complaint. (*Id.*). CCI argues that the Court should rely on—and in fact must accept as true—the information contained in those exhibits, including CCI's own allegations, because Vega attached them to the First Amended Complaint. (*Dkt. 32 at 3–4, 6–7, 15). But the Court will not, and is certainly not required to, accept as true the *defendant's* allegations incidentally attached to the Complaint as part of the administrative record. While it might be the case that a court may consider a conflict

5

between a factual allegation in the complaint and facts supported by exhibits attached to the complaint in ruling on a motion to dismiss (*see* Fed. R. Civ. P. 10(c); *Fayetteville Inv. v.Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)), the Court is not required to accept as true any allegations made by the defendant that happen to be in the administrative record. Nor does it make sense for the Court to even consider the defendant's allegations at the motion to dismiss stage, because doing so would turn the motion to dismiss into factual dispute, when the purpose of a motion to dismiss is merely to test the sufficiency of the plaintiff's factual allegations.

Therefore, the Court will not consider CCI's allegations in its Position Statement to the EEOC in ruling on this motion to dismiss.

B.   Racial and National Origin Discrimination Claims (Counts I, III and V)

Vega pleads two Title VII discrimination causes of action, one based on race (Count I) and one based on national origin (Count III). Vega is of Puerto Rican descent, so he can plead his Title VII claim as either based on race or national origin. *See, e.g., Vergès v. Va. Highlands Cmty. Coll.*, No. 1:16-cv-5, 2016 WL 3024170, at *4 n. 5 (W.D. Va. May 25, 2016) (finding plaintiff, a United States citizen of Puerto Rican descent, satisfied protected class element for purposes of motion to dismiss); *Nieves v. CCC Transp., LLC,* No. 3:12-CV-500, 2012 WL 3880590, at *5 (E.D. Va. Sept. 6, 2012) (denying motion to dismiss because plaintiff, a native of Puerto Rico, demonstrated plausible claim to relief for race and national origin discrimination); *Cruz v. Town of S. Boston, Virginia*, No. 4:06-cv-1, 2006 WL 2129357, at * 3 (W.D. Va. 2006) (denying motion to dismiss because pro se plaintiff established his membership in a protected class "[r]egardless of whether [he] referred to himself as Puerto Rican, American, and Hispanic" in his complaint).

Vega pleads no evidence of direct discrimination, so he can only make his claim out by

6

pleading disparate treatment. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). To plead a case of disparate treatment under Title VII sufficient to withstand a Rule 12(b)(6) motion, a plaintiff must show that (1) he is a member of a protected class; (2) he had satisfactory job performance; (3) he was subjected to adverse employment action; and (4) similarly situated employees outside his class received more favorable treatment. *Prince-Garrison v. Md. Dep't of Health & Mental Hygiene,* 317 F. App'x 351, 353 (4th Cir. 2009). Defendant concedes that Vega is a member of a protected class and that he has pled sufficient facts to support that he performed his job satisfactorily.

Defendant argues that Vega was not subject to an actionable employment action because of Title VII's 300-day limitation for filing claims with the EEOC. Title VII requires that charge of discrimination to be filed with the EEOC within 300 days "after the alleged employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Defendant notes correctly that Vega filed his charge with the EEOC on December 31, 2020, and 300 days prior to that was March 6, 2020. Defendant argues that although it terminated Vega on March 13, 2020 (i.e., within 300 days of Vega filing his EEOC charge), the Court may not consider any events that occurred before March 6, 2020 in ruling on this motion to dismiss. (Dkt. 32 at 8–9). That is not correct. Fewer than 300 days passed between the actionable event—Vega's termination—and the date that he filed his charge with the EEOC. Those are the only relevant dates under the statute. *See* 42 U.S.C. § 2000e-5(e)(1). The Court is not, as Defendant seems to suggest, prohibited from considering evidence relating to events more than 300 days before Vega filed his charge with the EEOC.

The Court holds that Vega has sufficiently pled that he was subject to an adverse employment action when he CCI terminated him on March 13, 2020, and that his complaint is

not time-barred.

Vega fails, however, on the fourth prong, which requires him to plead that similarly situated employees outside his class received more favorable treatment. Vega vaguely alleges that some non-Puerto Rican employees were not disciplined as he was for missing work due to a lack of transportation. (Dkt. 23 at ¶¶ 19, 21). He also alleges that a non-Puerto Rican employee who was also on light duty was treated differently (*Id.* at ¶¶ 20, 21), but does not actually allege how, exactly, that employee was treated differently—whether that employee was granted overtime, or not terminated, or something else. These allegations are insufficient to make out a plausible allegation that Vega was treated differently from an individual under similar circumstances outside of his protected class. The Fourth Circuit noted in *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) that it is not enough for a plaintiff to simply claim that a particular coworker outside the protected class was treated differently—the plaintiff must allege facts explaining how the person was similarly situated and treated differently. Here, Vega's allegations are so speculative as to how his coworkers were similarly situated and how they were treated differently than him on the basis of race or national origin that they cannot form the basis of a plausible disparate treatment claim under Title VII.

Therefore, the Court will dismiss Counts I and III.

Vega also brings a count for racial discrimination under 42 U.S.C. § 1981 (Count V). The elements of a racial discrimination claim under 42 U.S.C. § 1981 are the same as those for a Title VII discrimination claim. *Ford v. General Elec. Lighting, LLC*, 121 Fed. App'x 1, 5–6 (4th Cir. 2005). Therefore, Count V falls with Counts I and III.

### C.   Title VII Retaliation (Count II)

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing]

against" an employee for "oppos[ing] any practice" made unlawful by Title VII or having "made

a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing" under Title VII. 42 U.S.C. § 2000e-3(a). Title VII "protects activity in opposition not

only to employment actions actually unlawful under Title VII but also employment actions an

employee reasonably believes to be unlawful [under Title VII]." *EEOC v. Navy Fed. Credit

Union*, 424 F.3d 397, 406 (4th Cir. 2005).

Vega's Title VII retaliation claim fails because he has not alleged that he engaged in any

activity that could form the basis of a retaliation claim—he has not alleged that he "opposed any

practice" or "made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). The Complaint pleads two

actions: (1) that he raised a grievance about a coworker who was also on light duty being granted

overtime, while he was not, and (2) that he filed a worker's compensation claim. (Dkt. 23 at

¶¶ 16, 18, 25–26).

Neither of those actions could constitute the basis of a Title VII retaliation claim. With

respect to Vega's grievance about a coworker who was granted overtime while on light duty, the

Court notes that "in order to be protected activity, the complaints must be directed to an unlawful

employment practice, not just a general complaint that an employment action was unfair or

unwarranted." *Fawley v. Layman, Diener, & Borntrager Insurance Agency, Inc.*, No. 5:17-cv-44,

2018 WL 3039737, at *4 (W.D. Va. June 19. 2018); *see also Romeo v. APS Healthcare

Bethesda, Inc.*, 876 F. Supp. 2d 577, 588 (D. Md. 2012) (noting that "Title VII does not protect

general complaints of unfair treatment"; instead, a complaint is "protected activity when the

employer understood, or should have understood, that the plaintiff was opposing discriminatory

conduct") (citations omitted); *DeMasters v. Carillion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015)

(explaining that protected activity is oppositional conduct directed to an "unlawful employment practice" and "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions *in order to bring attention to an employer's discriminatory activities*") (emphasis added) (quoting *Laughlin v. Metro Wash. Airports Auth*., 149 F.3d 253, 259 (4th Cir. 1998).

The same logic applies to the worker's compensation claim—the fact that Vega filed for worker's compensation has nothing to do with the protections of Title VII, so it cannot be the basis of a Title VII retaliation claim. *See Nash v. Braswell Foods*, No. 3:16-cv-592, 2017 WL 810288, at *6 (E.D. Va. Feb. 28, 2017) ("[F]iling a workers' compensation claim does not qualify as a protected activity under Title VII").

Because Vega has failed to plead that he engaged in any protected activity against which CCI could have retaliated, the Court will dismiss Count II.

### D.   Hostile Work Environment (Counts IV and VI)

Vega further brings causes of action alleging that he was subject to a hostile work environment due to his race or national origin in violation of Title VII (Count IV) and in violation of 42 U.S.C. § 1981 (Count VI). The elements of a hostile work environment claim "are the same under either § 1981 or Title VII." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001). To establish a claim for a hostile work environment, a plaintiff must show that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [race/national origin]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010).

Vega alleges no facts that go towards these counts. He alleges no "unwelcome conduct"

at all—he does not allege that any of his coworkers or supervisors ever made any comments or performed other conduct relating to his or anyone else's race or national origin—so the hostile work environment claims fail at the first step. The Court will therefore dismiss Counts IV and VI.

### E.   ADA Discrimination (Count VII)

Vega's final cause of action is for discrimination under the ADA, 42 U.S.C. § 12101, *et seq.* To make out an ADA discrimination claim, a Plaintiff must ultimately show that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001); 42 U.S.C. § 12112. The question here, then, at the motion to dismiss stage, is whether Vega has stated sufficient facts that he could ultimately plausibly make out those elements. Defendant concedes that Vega has done so for the first three elements, contesting only the fourth, the sufficiency of the allegation that Vega was discharged under circumstances that raise a reasonable inference of unlawful discharge. (Dkt. 32 at 15).

Defendant relies on its factual allegations made in its above-discussed Position Statement to the EEOC to argue why Vega was not discharged under such circumstances (*see id.* at 14–15), but, as stated, the Court cannot rely on Defendant's own allegations at the motion to dismiss stage, where the Court must accept as true factual allegations in the Complaint. Looking only to the factual allegations in the Complaint, the Court holds that Vega has stated sufficient facts to make out a plausible claim for relief on this Count. The Court notes in particular the allegation that one of Vega's supervisors and several of his coworkers referred to him as "Mr. Handicap"

during his injury (Dkt. 23 at ¶ 115), and that when he was fired, another supervisor told Vega

that he was "only keeping people who are beneficial and/or productive" (*id.* at ¶ 33). Taking

those allegations as true and providing all reasonable inferences to Vega—and taking note of the

fact that he filed the Complaint *pro se*—the Court holds that those facts are sufficient to state a

plausible claim for relief for ADA discrimination for his termination from CCI.

### V.  Conclusion

In sum, the Court will GRANT in part and DENY in part Defendant's motion to dismiss,

Dkt. 31. The Court will dismiss Counts I through VI, but will not dismiss Count VII. The Court

will issue an official order to accompany this memorandum opinion.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel

of record.

Entered this  28th  day of July 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE